**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF GEORGIA**

**STATESBORO DIVISION**

| | | |
|---|---|---|
| TERRANCE GERARD STANTON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CV615-064 |
| | ) | CR612-018 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Convicted and sentenced after a jury trial for his participation in a drug distribution conspiracy, docs. 755 & 951, [1] Terrance Stanton moves under 28 U.S.C. § 2255 to have his sentence reduced from life imprisonment. Docs. 1124 & 1137. The Government filed a response and Stanton filed a reply. Docs. 1266, 1286. Review of the parties' briefing shows that his motion must be denied.

### A. Background

Movant was charged with conspiring to possess with intent to distribute 280 grams or more of cocaine base, five kilograms or more of cocaine hydrochloride, and quantities of ecstasy and marijuana (Count

---

[1] The Court is citing to the criminal docket in CR612-018 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

1), distribution of cocaine (Count 24), plus several counts of using a communication facility (telephone) to facilitate the conspiracy (Counts 90-95, 102, 105-110). Doc. 3.

Stanton and one of his co-defendants proceeded to trial and were found guilty on every count. Docs. 754 & 755. As part of a special verdict form, the jury also found that Stanton and his co-defendant had conspired to distribute 280 grams or more of cocaine base and five kilograms or more of cocaine hydrochloride. *Id.* Prior to trial, the Government had filed a 21 U.S.C. § 851 notice of its intention to seek enhanced penalties based on Stanton's prior felony drug convictions, thus subjecting him to a mandatory life sentence. Doc. 709; *see* 21 U.S.C. §§ 841(b)(1)(A), 846. The Court, however, granted the Government's motion to withdraw the notice prior to sentencing, thus reducing Stanton's exposure to the unenhanced penalty -- 10 years to life. Docs. 983 & 984 at 5.

Stanton's Presentence Investigative Report added seven points to his drug-offense Guidelines level of 34 -- two for the possession of a firearm, two for the commission of the offense as part of a criminal livelihood, and three for an aggravating role -- for a total offense level of

41. PSR at ¶¶ 22-39. Because his criminal history placed him within category II under the Guidelines, the advisory range of imprisonment was 360 months to life imprisonment. *Id.* at ¶ 39 (prior convictions scoring three criminal history points under the Guidelines); ¶ 59 (360 months to life imprisonment advised for total offense level of 41 and criminal history category II). Stanton objected to various aspects of the calculation, including his criminal history score, the drug quantity involved, and points added for his possession of a firearm and aggravating role, *id.*, Addendum at 1, which the Court overruled after a hearing. Doc. 986 at 32. It sentenced him to life imprisonment. *Id.* at 37.

Stanton appealed, arguing, *inter alia*, that (1) insufficient foundation existed for the admission of certain wiretapped telephone conversations; (2) a law enforcement agent improperly testified as an expert at trial; (3) his prior drug convictions were improperly admitted at trial; and (4) his criminal history, drug quantity, and role in the offense were incorrectly calculated under the Sentencing Guidelines. Doc. 1078; *United States v. Stanton*, 589 F. App'x 477 (11th Cir. 2014). The Eleventh Circuit affirmed his conviction. *See id.* Upon Stanton's

*pro se* motion for a reduced sentence under 18 U.S.C. § 3582(c)(2), the Court granted a two-level offense level reduction and reduced his sentence from life imprisonment to 360 months' imprisonment. Docs. 1104 & 1185. He then filed the instant § 2255 motion, seeking to overturn his sentence. Docs. 1124 & 1125.

## B. ANALYSIS

Stanton presents three grounds for relief: (1) "prosecutorial misconduct" and "malicious prosecution," (2) errors by the district court, and (3) ineffective assistance of counsel during trial and appeal. Doc. 1124.

### 1. The Ippolito Factor

Stanton contends that the lead prosecutor in his case, former Assistant United States Attorney Cameron Ippolito, engaged in extracurricular prosecutorial misconduct[2] and malicious prosecution, adversely affecting his sentence. Doc. 1124 at 49-52.

Misconduct claims justify relief on collateral review if the prosecutor's actions rendered the proceedings "so fundamentally unfair

---

[2] Ippolito's "improper relationship" with former Alcohol Tobacco and Firearms Agent Lou Valoze tarnished several convictions and sentences unrelated to Stanton's. *In re Ippolito*, 2015 WL 424522 at * 1 (S.D. Ga. Jan. 30, 2015).

as to deny him due process." *Davis v. Zant*, 36 F.3d 1538, 1545 (11th Cir. 1994). Movants thus must show that there is "a reasonable probability that the outcome was changed" by the prosecutor's actions. *Id.*

Stanton falls far short of meeting that burden. Regardless of what Ippolito did in her private life with Agent Valoze, and how it may have impacted the outcome of *other* cases, Stanton's case had *absolutely nothing* to do with Agent Valoze. Valoze was not involved in the Government's investigation or prosecution of Stanton in any way, and did not testify in any matter related to Stanton. *See Ippolito*, 2015 WL 424522. Nothing about the Ippolito-Valoze affair could have been used at trial to cross-examine or impeach any witness.[3]

---

[3] Stanton links nothing to the "tainted" facts revealed by the Government:

(1) that Assistant United States Attorney Cameron Ippolito and ATF Special Agent Lou Valoze engaged for years in an affair; (2) that Agent Valoze, assisted by AUSA Ippolito, provided potentially false or misleading information to a government agency to secure a visa for a government informant; and (3) that Agent Valoze, under questioning by AUSA Ippolito during a criminal trial, provided potentially false or misleading testimony regarding benefits provided to that government informant.

*Ippolito*, 2015 WL 424522 at * 2; *see also id.* ("In every case from 2009 to the present in which Valoze testified in a contested hearing, including trial, sentencing, or an evidentiary hearing on a suppression or other pretrial motion, from the inception of the affair to the present, the government intends to disclose the fact of the affair to defense counsel. In those contexts, Valoze's testimony arguably was material to guilt or punishment, and the affair could have been a viable subject of cross-examination

Stanton offers absolutely no evidence above mere conjecture of any "spill-over behavior" that even tangentially connects the affair (or work relationship with the agents investigating his case) to his case -- much less that the proceedings against him were rendered "so fundamentally unfair as to deny . . . due process" or that, had he known of the affair, there was a "reasonable probability" of a different trial outcome. *Davis*, 36 F.3d at 1545.[4]

Stanton also alleges that the Government's dismissal of charges against some defendants (who had been misidentified on recorded telephone calls), but not him, was reversible error. Doc. 1124 at 50.

---

into his bias."). Again, Valoze was *not* involved with Stanton's case at *any* point of the investigation or prosecution, and *never* testified at his trial. Movant concedes that he "can be sure that Agent Valoz[e] was not part or part of his investigation," but somehow still contends that because "his case was investigated by the same authorities and prosecuted by Ms. Ippolito, [there] is a serious question of concern as to the secret affair that has been rooted at this point." Doc. 1124 at 52. This specious allegation that somehow the Ippolito-Valoze affair seeped out to taint everything the United States Attorneys' office ever touched is just that: specious. Hogwash. The Ippolito-Valoze affair is completely *irrelevant* to Stanton's incarceration.

[4] Even if the Court assumed that contemporaneous knowledge of Ippolito's affair would have utterly destroyed her credibility at sentencing, Ippolito never testified. Her credibility has no relationship to the testifying witnesses and even if it did, one mitigating witness who gave testimony of questionable value likely would not have made a difference when stacked against the criminal history and offense severity facing Stanton. That quantum of evidence certainly isn't enough to show "a reasonable probability that the outcome was changed" by Ippolito's presence at sentencing. *Davis*, 36 F.3d at 1545.

But there is no evidence whatsoever that *Stanton* was misidentified in the phone calls. It cannot be malicious prosecution to dismiss charges against an incorrectly identified defendant while pursuing charges against one correctly identified and inculpated by substantial circumstantial evidence. That is the essence of responsible, ethical prosecution.

### 2. Ineffective Assistance of Counsel

In his second claim, Stanton argues that his trial counsel was ineffective for: (1) failing to advise him he was not in fact a career offender; (2) failing to better argue pre-trial motions and trial objections; (3) failing to request certain jury instructions on conspiracies and buyer-seller relationships; (4) failing to move for acquittal based on insufficient evidence against him; (5) failing to object to testifying Agent Kevin Waters' testimony; and (6) failing to raise claims on direct appeal. *See* doc. 1124 at 10-48.

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

As to the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

### i.    Career Offender

Stanton was offered a deal prior to trial that would have assigned him a 30-32 point offense level and a Guidelines-advised sentence of

168 to 210 months' imprisonment.  Doc. 1124-1 at 2.  He says that his attorney told him that if he rejected the plea offer, he would "get a Life-term of imprisonment pursuant to 4B.1 of the Career Offender Enhancement."  Doc. 1124 at 11.  He rejected the offer, was found guilty on all counts, and -- as predicted by counsel -- was sentenced to life imprisonment.

At sentencing, however, he was not found to be a career offender, and thus he faults counsel for telling him he would be.  But there is no prejudice here -- he rejected a guilty plea when he believed it would subject him to an advisory range of 168 to 210 months' imprisonment as a career offender.  *See* doc. 1124-1 at 2-4.  Even absent the career offender adjustment, Stanton would have been placed at a total offense level of 38 and a (statutorily-capped maximum) Guidelines-advised sentence of 240 months.  *See* doc. 1266 at 9-10.  So, corrected advice to Stanton (without the career offender adjustment) would have been for a 240 month sentence.  But he rejected an offered plea deal for an 168 to 210 month sentence.  Even assuming counsel erred in some way by not advising him he should not have been considered a career offender, there is no "reasonable probability" that he "would have accepted the . .

. plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Movant also names a flurry of other motions and objections he wishes his counsel had made at the plea offer stage: various "downward departures applicable to [his] circumstances," "discretionary sentencing under *Booker*," a "minor role" adjustment," and a that his "criminal history [was] over-represented." Doc. 1124 at 11. He doesn't specify what effect, if any, these would have had on his plea offer, but even assuming it made the offer more attractive the record is clear that Stanton was disinclined to accept his attorney's recommendation of doing anything but joining his codefendant at trial. *Strickland*, 466 U.S. at 694; *Wainwright*, 811 F.2d at 1434; *see also Butcher*, 368 F.3d at 1293 (alleged errors must "had some *conceivable* effect on the outcome of the proceeding" to show prejudice.").

### ii.    Motions and Objections

Stanton complains that his attorney should have moved to suppress evidence arising from the wiretapped phone calls presented at trial. Doc. 1124 at 8-9. Counsel did; after the Government convincingly rebutted the motion, he withdrew it. *See* docs. 422 & 541 at 15-25; *see*

*also Stanton*, 589 F. App'x at 478 (finding no error in trial court's admission of evidence of the phone calls). The mere fact that this Court disagreed with Stanton' attorney and denied his motions and objections does not render his performance deficient under *Strickland*. It is unclear how movant believes his counsel was ineffective for not pushing harder for suppression if there was no legitimate basis for it. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press nonfrivolous points").

Stanton's attorney tried to exclude probative, but prejudicial, evidence of his prior drug convictions. Doc. 925 at 404-06. In overruling his objections, the Court agreed with the Government that the convictions were properly admitted under Fed. R. Evid. 404(b) for "identification purposes, motive, opportunity, and intent." Doc. 925 at 404; *see also Stanton*, 589 F. App'x at 478 (affirming trial court's decision); doc. 1266-2 at 41-45 (Government's appeal brief, arguing that because Stanton "placed his identity at issue throughout the trial," evidence of his "own prior drug activities bolstered the government's claim that the voice captured discussing similar activities was, in fact, Stanton's.") (citing *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224

(11th Cir. 1993) ("[E]vidence of prior drug dealings . . . is highly probative of intent in later charges of conspiracy and distribution of a controlled substance.")). Stanton also contends that ineffective assistance of counsel was the source of the Court's admission of his codefendants' prior convictions and tattoos, which then negatively impacted him by association. Doc. 1124 at 33. But the Court also correctly admitted that evidence. *Stanton*, 589 F. App'x at 478 (affirming trial court's decision). Because the Court's overruling of his objection was correctly decided, Stanton cannot demonstrate any prejudice suffered for his counsel's alleged failure to somehow better argue it -- much less the other failed arguments already presented by codefendant's counsel.

### iii. Jury Instructions

Stanton contends that his attorney failed to ask the Court to instruct the jury on the difference between single and multiple conspiracies and on the insufficiency of a buyer-seller relationship to establish participation in a conspiracy. Doc. 1124 at 24-31. However, he was not entitled to an instruction on multiple conspiracies because there was only one coordinated effort to sell crack cocaine between

Stanton and his coconspirators -- nothing offered at trial suggested the existence of more than one drug conspiracy. *See United States v. Calderon*, 127 F.3d 1314, 1328-29 (11th Cir. 1997) (a multiple conspiracy instruction is required where "there proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment."). And regardless, Stanton's entire defense hinged on an assertion he was mistakenly identified on the phone calls and unconnected to *any* conspiracy -- so it would have done him no favors to request and obtain an instruction that the jury must find he was a member of only the conspiracy alleged and not some other. *See Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) ("Constitutionally sufficient assistance of counsel does not require presenting an alternative -- not to mention unavailing or inconsistent -- theory of the case."). *See also* doc. 1233 at 6 (the Court charged the jury to "determine from the evidence in this case whether the defendants are guilty or not guilty of those specific crimes" "charged in the indictment" and no others).

Movant also was not entitled to a buyer-seller instruction, which

applies only to isolated transactions where "the buyer's purpose is merely to buy, and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement[.]" *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993). No reasonable juror could have looked at the content of the ongoing conversations between Stanton, Mingo, Mickel, codefendant Scott, and others and concluded that this was a one-off. The jury heard conversations where Stanton agreed to provide drugs for resale by Scott and where they commiserated about the fates and loyalties of their associates in moving product. Doc. 924 at 81-82, 94-95, 98-99, 104. Movant protests that he was misidentified (because, he claims, he only ever sold drugs on a personal basis) notwithstanding, sufficient evidence supported the jury's finding that this was more than an isolated instance. Too, the Court addressed any concerns by instructing the jury that "simply being present at the scene" or "associating with certain people in discussions, common goals and interests doesn't establish proof of a conspiracy." Doc. 1233 at 9-10; *see United States v. Russell*, 378 F. App'x 884, 888 (11th Cir. 2010) (where trial judge gave a jury instruction that "sufficiently addressed the substance of the

requested buyer-seller instruction" there is no error).

### iv.   Acquittal

Claiming evidentiary insufficiency, Stanton faults his attorney for failing to file a Fed. R. Crim. P. 29 motion for judgment of acquittal. Because such a motion would have been meritless,[5] counsel was not ineffective for failing to make it. *Jones*, 463 U.S. at 751.

### v.   Agent Waters

Stanton argues that Agent Waters -- who had 18 years of law enforcement experience and had participated in hundreds of debriefings of drug dealers, developing a specialized knowledge of street-level drug distribution, tools of the drug trade, and drug code language (*see* doc. 703 at 2-3) -- was not qualified to testify as an expert.  Doc. 1124 at 38-42.  Thus, counsel was deficient for failing to object to the admission of his testimony.  *Id.*  However, given Agent Waters' breadth of experience

---

[5]   Fed. R. Cr. P. 29 motions may be granted only if "no reasonable trier of fact could find guilt beyond a reasonable doubt."  *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010).  Here, a slew of testimony, multiple wiretaps, and other evidence were offered to demonstrate that Stanton was involved in the manufacture and distribution of crack cocaine.  *See* doc. 924 at 75-108; doc. 925 at 223-34, 262-277, 299-312.  The plethora of evidence assembled against him could well have convinced a reasonable juror of his guilt, Stanton's base denials of its sufficiency notwithstanding.  *See United States v. Emmanuel*, 565 F.3d 1324, 1333 (11th Cir. 2009).

and the contents of the recorded conversations played for the jury,[6] such an objection would have been frivolous. *See United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009) (finding no error where an officer with 15 years' experience and a background in analyzing code words testified as a Fed. R. Civ. P. 702 expert on the "operations of narcotics dealers, including drug codes and jargon").

Even if Agent Waters' testimony sometimes "went beyond interpreting code words to interpret conversations as a whole," this at most had a negligible effect upon the outcome. As discussed above, the jury was presented with a trove of evidence, testimony, and wiretapped conversations on which to base their decision on his guilt. *See* doc. 924 at 75-108; doc. 925 at 223-34, 262-277, 299-312. *Emmanuel*, 565 F.3d at 1336 ("Even if none of Sergeant Woodside's expert testimony was admissible, the jury could have easily interpreted the recorded conversations as involving drugs based on other evidence in the case,

---

[6]   In those conversations, the participants – including Stanton – discussed "flow," "catching a play," "fronting," "feral," "slabs," "piecing out," "ittles," "circles," "weight transactions," "girl," "vick," "rips," "testing," "dropping," "dumb," "bedding down," "groovin it," "grinding it," "four-way," "9s," "stupid sack," "plays," "toolie," "four-fifths," "chopper," "the man," "iron," "jigged," "joogs." ([Doc. 924] at 75-76, 78- 79, 81-83, 86-87, 89-91, 93-95, 102-05.)

Doc. 1266 at 19.

including actual seizures of drugs and drug money and testimony from coconspirators. Considering the substantial evidence against [defendant], Sergeant Woodside's opinion testimony that went beyond interpreting drug codes and jargon was merely cumulative and was not essential to the jury's verdict."). Because any objection to Agent Waters' testimony would have been frivolous, and the admission of his expert testimony was merely cumulative and nonessential to the jury's verdict, counsel was not ineffective for failing to object to it.

### vi. Direct Appeal

Stanton also faults counsel for not raising certain arguments on appeal, which would have certainly resulted in a more favorable disposition. Doc. 1124 at 42-48. The constitutional right to appellate representation, however, does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988); *Jones*, 463 U.S. at 754 ("Nothing in the Constitution or our interpretation of that document requires" an appellate attorney "to raise every 'colorable' claim suggested by a client."). The appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." *Evitts v. Lucey*, 469

U.S. 387, 394 (1985).

Movant complains about counsel's decision to refrain from raising a litany of "colorable" and "meritorious" issues -- including "lack of jurisdiction," "lack of prosecution," and his various, other unmeritorious arguments resoundingly disposed of above. *See* doc. 1124 at 34-35. At best, movant is flinging everything he didn't like about his trial against the proverbial wall, hoping something will stick. Absent merit, however, nothing does. For that matter, he cannot simply "laundry list" conceived claims without explaining, with full citation to the record, how they were viable *and* that no reasonable lawyer would have missed them.[7]

Finally, Stanton argues that counsel failed to represent his interests by "compil[ing] and rehash[ing] the combination of [his] direct appeal to a coconspirator whom [he] was on trial with and couched the issues together further prejudicing [movant] with conflicting interest."

---

[7]  A typical IAC claim succeeds only where counsel has, metaphorically speaking, shot at the side of a barn yet missed. *See Sullivan v. Secretary, Fla. Dep't. of Corr.*, 837 F.3d 1195, 1205 (11th Cir. 2016) (an attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance, as element of ineffective assistance of counsel); *see also id.* at 1206 (in prosecution for fleeing and attempting to elude a law enforcement officer, trial counsel was ineffective in presenting a voluntary intoxication defense long after it had been statutorily abolished, instead of advising defendant to accept state's pretrial plea offer).

Doc. 1124 at 47. But even a cursory review of the appellate record demonstrates that Stanton's attorney tailored his arguments to his client and presented the strongest claims available to him in the face of an avalanche of evidence. *See Stanton*, 589 F. App'x 477. There is no IAC claim to be found here.

### 3. District Court Errors

Movant argues that the Court made "numerous" "cumulative" errors that denied him "any fair and just criminal proceeding," including: (1) admitting evidence of his and his codefendant Lorenzo Scott's prior convictions and tattoos (to prove his bad character and thereby "taint" the jury); (2) denying Scott's severance motion; (3) applying Guidelines enhancements Stanton disagreed with; (4) failing to give the jury certain instructions on conspiracies and informants, and (5) "intervening into the trial" (apparently by overruling or sustaining objections from counsel as judges are wont to do). Doc. 1137 at 2-7.

A prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Generally, where a movant seeks

collateral relief based on trial errors to which no contemporaneous objection was made at trial, *id.* at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005). (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills*, 36 F.3d at 1055. In other words, a movant may not use his collateral attack as "a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (cite omitted). To excuse the procedural bar, a § 2255 movant must "demonstrate a cause for [his] default and show actual prejudice suffered as a result of the alleged error." *Montano*, 398 F.3d at 1280.

Stanton's first and third claims that the Court improperly applied Guidelines enhancements he disliked and introduced evidence of his prior convictions (and, for that matter, anything to do with his codefendants' tattoos and prior convictions) were already raised and rejected on appeal. *See Stanton*, 589 F. App'x 477. They are foreclosed. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills*, 36 F.3d at

1056. And because his second, fourth, and fifth alleged "errors" were *not* raised on appeal, they too are procedurally barred. His associated, meritless IAC claims do not overcome that bar. *Montano*, 398 F.3d at 1280; *Lynn*, 365 F.3d at 1232.

## C.   CONCLUSION

Accordingly, Terrance Stanton's' § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the

Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __9th__ day of January, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA